IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JACKIE COLLINS, #129737, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-950-WHA |
| | ) | [WO] |
| | ) | |
| KIM THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Jackie Collins ("Collins"), a state inmate, challenging actions taken against him during his

incarceration at the Limestone Correctional Facility ("Limestone").   In this complaint,

Collins alleges that correctional officials violated his constitutional rights with respect to

his internal classification "as a sex offender even though he had never committed a sex

offense and had never been convicted of a sex offense...."  *Complaint - Doc. No. 1* at 10.

Collins names Kim Thomas, Commissioner of the Alabama Department of Corrections at

the time his claims arose, and Carolyn Golson, the Director of Classification, as

defendants.   Collins seeks monetary damages, issuance of a declaratory judgment and

injunctive relief "restraining the defendants from branding [him] with the 'S' suffix and/or

labeling [him] as a criminal sex offender and ... ordering the defendants to [immediately] expunge all of the same from [his] files...." *Id*. at 18.

The defendants filed a special report and supporting evidentiary materials addressing Collins' claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of March 22, 2013 - Doc. No. 21*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact

exists when the nonmoving party produces evidence that would allow a reasonable fact-

finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, Collins is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine dispute

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275,

1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Collins fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  ABSOLUTE IMMUNITY

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not

abrogated Alabama's immunity.   Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### IV.  DISCUSSION OF CLAIMS

#### A.  Facts

Collins is incarcerated pursuant to convictions imposed upon him in 1983 by the Circuit Court of Morgan County, Alabama for two counts of second degree kidnapping, one count of first degree assault and one count of first degree robbery.  Collins admits that the kidnapping convictions involved the kidnapping of children ages two and four for monetary gain.[2]  For these four convictions, the trial court sentenced Collins to consecutive sentences totaling seventy years imprisonment.  Collins "entered the Alabama prison system on 2/16/84."  *Complaint - Doc. No. 1* at 8.

---

[2]Collins states that he kidnapped a former fellow inmate's young sons from their mother in exchange for this individual "giv[ing] the plaintiff $80.00 to get out of jail ... [and] an additional $500.00 to abduct [the children]." *Complaint - Doc. No. 1* at 6.  Collins concedes that he was not the parent, guardian or custodian of these children.

During his incarceration, Collins received a subsequent conviction for promoting prison contraband before the Circuit Court of Limestone County, Alabama and received a sentence of three years to run concurrent with the kidnapping sentence he was serving at the time of this conviction. Based on the cumulative effect of his sentences, Collins' minimum release date is June 9, 2045. *Defendants' Exhibit C- Doc. No. 20-3* at 9.

Collins asserts that In February of 2007 correctional officials at Limestone classified him as a sex offender based on his kidnapping convictions and placed the "S" suffix adjacent to his name and AIS number. *Complaint - Doc. No. 1* at 10. Collins alleges that his reclassification occurred without either notice or a hearing. *Id*. at 13. Collins complains that the "S" suffix classification violates his federal constitutional right to due process and imposes unconstitutional punishment under the Ex Post Facto and Bill of Attainder Clauses. *Id*. at 12-17.

### B. Basis for Internal Classification

The Classification Manual for the Alabama Department of Corrections directs that "[t]he 'S' is the suffix applied when the inmate is convicted of an offense as outlined in the CNA that requires registration and community notification with residence restrictions." *Defendants' Exhibit C - Doc. No. 20-3* at 8. Consequently, the basis for the decision of correctional officials to impose the "S" suffix classification upon Collins is contained in the Alabama Sex Offender Registration and Community Notification Act, Alabama Act

No. 2011–640, § 49, Ala. Code § 15–20A–1, *et seq.*, ("ASORCNA"), formerly codified as the Alabama Community Notification Act, *Ala. Code* 1975 § 15-20-20 *et seq* ("ACNA").[3] The ASORCNA sets forth those offenses considered sex offenses in Alabama, *Ala. Code* 15-20A-5(1)-(39), and governs the registration and community notification requirements applicable to adult sex offenders. *Ala. Code* § 15-20A-4(1). The ASORCNA is "applicable to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose." *Ala. Code* § 15-20A-3. Under the provisions of this statute, "[k]idnapping of a minor, except by a parent, guardian, or custodian" constitutes a sex offense. *Ala. Code* § 15-20A-5(18).[4] Collins concedes that he was not the parent or guardian of the children he kidnapped and did not have legal custody of the children at the time of the kidnapping. Under these circumstances, Alabama law identifies Collins a sex offender.[5]

## C. The Due Process Challenges

1. <u>**Procedural Due Process**</u>. Collins complains that in accordance with the

---

[3] The ACNA became effective in 1996 and remained in effect until its repeal and enactment of the ASORCNA on July 1, 2011.

[4] Kidnapping of a child by someone other than his/her parent also constituted a sex offense under the former provisions of the ACNA. *Ala. Code* § 15-20-21(4)(h) (superseded by the ASORCNA).

[5] Collins limits his complaint to the validity of his classification as a sex offender. The court notes that any potential challenges to the constitutionality of the registration and notification requirements of the ASORCNA are not ripe for review as Collins minimum release date is in June of 2045. *United States v. Veal*, 322 F.3d 1275, 1278 (11th Cir. 2003); *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999).

Classification Manual correctional personnel have classified him "as a sex offender, when [he has] never been convicted of a sex offense, without any adequate due process protections, in violation of the Fourteenth Amendment...." *Complaint - Doc. No. 1* at 12. In support of this claim, Collins asserts that the classification decision occurred "without any prior notice, without any adequate hearing, [and] without any opportunity to present evidence [or witnesses] in his defense" despite his "hav[ing] never committed or been convicted of a sex offense." *Id*. at 13.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." To present a cognizable procedural due process claim, Collins must establish that (1) his classification as a sex offender in accordance with the definition set forth in the ASORCNA deprives him of a protected liberty interest, (2) state action, and (3) constitutionally inadequate process. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989); *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). Thus, an inmate "would only be constitutionally entitled to procedural due process if he were deprived of a protected liberty interest." *Charriez v. Secretary, Florida Dept. of Corrections*, 596 Fed. Appx. 890 (11th Cir. 2015). An inmate confined in the Alabama prison system has no constitutionally protected interest in a particular custody classification

11

level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); *Meachum v. Fano,* 427 U.S. 215, 225 (1976).   Moreover, the regulations of the Alabama Department of Corrections, fail to "create[] a liberty interest in not being classified as a sex offender" when an inmate has been convicted of a sex offense as defined by state law.   *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999); *see also*, *Doe v. Moore*, 410 F.3d 1337, 1342 n.3 (11th Cir. 2005) (quoting *Connecticut Dept. of Public Safety v. Doe*, 538 U.S.1, 6-7, 123 S.Ct. 1160, 1163 (2003)) ("no liberty interest was implicated because the [State] statute turned 'on an offender's conviction alone.'").   Since Collins has been convicted of offenses deemed sex offenses under Alabama law, he is entitled to no relief as any procedural due process requirements with respect to such offenses are met through the original proceedings that resulted in the convictions.   *Id*.

   2. __Substantive Due Process__.   Collins appears to argue that the classification manual's inclusion of his type of kidnapping offense as a sex offense is improper. *Complaint - Doc. No. 1* at 12.   The court construes this assertion as a substantive due process claim.

> Th[e] substantive component [of the Due Process Clause] protects
> fundamental rights that are so "implicit in the concept of ordered liberty" that
> "neither liberty nor justice would exist if they were sacrificed."   *See Palko*
> *v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288

(1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11ᵗʰ Cir. 1994) (en banc). Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses. See *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997); *McKinney*, 20 F.3d at 1556. When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267 (citations omitted). The Court, however, is very reluctant to expand substantive due process by recognizing new fundamental rights[.]

*Doe v. Moore*, 410 F.3d 1337, 1342-1343 (11ᵗʰ Cir. 2005).

"[T]he Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes [or classification policies based thereon], ... and [the Eleventh Circuit has found] no history or tradition that would elevate the issue here to a fundamental right. In fact, the case law ... found supports the contrary conclusion." *Id*. at 1345 (citation omitted); *Windwalker v. Governor of Alabama*, 579 Fed. Appx. 769, 773-774 (11ᵗʰ Cir. 2014) (The plaintiff's substantive due process claim provides no basis for relief because "in the context of a regulation [specifically] designed to protect the public from sex offender recidivism, none of [the plaintiff's] asserted rights are so

'deeply rooted' in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'").  This determination is equally applicable to the Classification Manual adopted by the Alabama Department of Corrections, a manual which utilizes the ASORCNA to define a sex offender.  "When a statute [or regulation] does not implicate fundamental rights, we must ask whether it is 'rationally related to legitimate government interests.'  *Glucksberg*, 521 U.S. at 728, 117 S.Ct. at 2271.  The rational basis standard is 'highly deferential'" and courts deem statutes or regulations "unconstitutional under a rational basis standard in only the most exceptional circumstances.  *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir.2001)."  *Doe v. Moore*, 410 F.3d at 1345.

The purpose of the ASORCNA "is to assist law enforcement in carrying out their duties and, ***most importantly***, to protect the public, ***especially children***" and "further[] the primary governmental interest of protecting vulnerable populations, ***particularly children***," by "monitoring and tracking" individuals convicted of sex offenses as defined by state law.  *Ala. Code* § 15-20A-2(4) and (5) (emphasis added).  "The ... intent in imposing certain [restrictions] on sex offenders is not to punish sex offenders but ***to protect the public and, most importantly, promote child safety***."  *Ala. Code* § 15-20A-2(5) (emphasis added).  Alabama law provides that a sex offender is "[a]n adult convicted of a sex offense."  *Ala. Code* § 15-20A-4(1).  The ASORCNA includes in its list of qualifying sex offenses the

14

kidnapping of a minor when the perpetrator is not the minor's parent, guardian or legal custodian. *See Ala. Code* § 15-20A-4(14) and § 15-20A-5(18). The precise offense for which Collins was convicted.

In light of the foregoing, the court finds that the ASORCNA is not violative of substantive due process. Consequently, the provision of the Classification Manual which utilizes the ASORCNA's definition of a sex offender for internal classification purposes does not deprive Collin of substantive due process violation.

### D.  Ex Post Facto and Bill of Attainder Claims

Collins complains that the policy utilized to classify him as a sex offender was not in effect at the time of his convictions and, therefore, his classification as a sex offender imposes unconstitutional punishment in violation of the Ex Post Facto and Bill of Attainder Clauses. The Ex Post Facto Clause directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). Under the Bill of Attainder Clause, legislatures are forbidden to engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Brown*, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715 (1965). "As a general rule, a law may constitute an ex post fact violation if it is intended to impose a retroactive

punishment or if it has the effect of transforming an otherwise civil remedy into a criminal penalty. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)." *Windwalker*, 579 Fed. Appx. at 771. Differences among the Ex Post Facto and Bill of Attainder Clauses with respect to the elements of punishment, if any, are not relevant here, and the court will therefore subject these challenges to the same analysis.

To determine whether the ASORCNA is intended as a retroactive punishment or has the effect of transforming a civil remedy into a criminal penalty, this court

> must look to the statutory text and structure to determine whether the legislature "either expressly or impliedly [indicated] a preference for one label or the other." [*Smith*, 538 U.S.] at 93, 123 S.Ct. 1140 (quotation omitted). "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id*. at 92, 123 S.Ct. 1140. "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id*. (quotation omitted).
>
> The second step—the "effects" analysis—involves consideration of the factors set out in *Kennedy v. Mendoza–Martinez*, which include whether, in its necessary operation, a regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; requires a finding of scienter; applies to behavior that is already a crime; promotes traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose. 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). "Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92, 123 S.Ct. 1140 (quotation and citation omitted; emphasis added). In *Smith*, the Supreme Court addressed whether "a sex offender registration and notification law constitute[d] retroactive punishment forbidden by the Ex Post Facto Clause," and concluded "that respondents [did not] show, much less by the clearest

16

proof, that the effects of the law negate[d] Alaska's intention to establish a civil regulatory scheme." *Id*. at 91, 105, 123 S.Ct. 1140.

Here, the stated purpose of ASORCNA is to regulate sex offenders for the sake of public safety. *See Ala.Code* § 15–20A–2(5) (declaring its intent "not to punish sex offenders but to protect the public and, most importantly, promote child safety.").... Having reviewed the statute, we conclude that [Plaintiff] has not offered the necessary "clearest proof" to override the legislature's intent that the act be nonpunitive and transform it into a criminal penalty. Indeed, of the several factors to consider, many cut against [Plaintiff], and we need only mention three—affirmative disability or restraint, rational connection, and excessiveness.

As for whether ASORCNA imposes an affirmative disability or restraint, this factor does not tip the balance in favor of [Plaintiff]. In analyzing this issue, we must keep in mind that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 100, 123 S.Ct. 1140. [The] consequences [which occur due to being identified as a sex offender] flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Id*. (quoting *Smith*, 538 U.S. at 101, 123 S.Ct. 1140). To the extent ASORCNA imposes additional burdens, we still fail to find it punitive.

As for rational connection, we remain unconvinced. Whether the regulatory scheme has a "rational connection to a nonpunitive purpose" is the most "significant" factor in the ex post facto analysis. *Smith*, 538 U.S. at 102, 123 S.Ct. 1140. Nevertheless, the requirement of a "rational connection" is not demanding: A "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Id*. Thus, ... [as we previously determined]: SORNA's "registration requirements have a rational relationship to promoting public safety in the same way that those involved in [*Smith*] did." 664 F.3d at 859. We reach the same result for ASORCNA.

Lastly, as for excessiveness, the Supreme Court has already permitted sex offenders to be regulated as a class regardless of individualized risk assessments:

> The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto

> challenges laws imposing regulatory burdens on individuals
> convicted of crimes without any corresponding risk
> assessment..... Doubtless, one who has violated the criminal
> law may thereafter reform and become in fact possessed of a
> good moral character. But the legislature has power in cases of
> this kind to make a rule of universal application.
>
> *Smith*, 538 U.S. at 103–04, 123 S.Ct. 1140 (quotation and citation omitted).
> Citing sex-offender recidivism studies, the Supreme Court specifically
> approved a state's conclusion "that a conviction for a sex offense provides
> evidence of substantial risk of recidivism." *Id*. at 103, 123 S.Ct. 1140.

*Windwalker*, 579 Fed. Appx. at 771-773.

In this case, Collins challenges a provision of the Classification Manual which implements the provisions of the ASORCNA to determine whether an inmate has been convicted of a sex offense. Collins has failed to establish that the "ASORCNA is 'so punitive either in purpose or effect' that it has overridden the legislature's intent that it be a civil regulatory statute. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140." *Windwalker*, 579 Fed. Appx. at 773. Both the classification provision at issue and the ASORCNA are civil in nature and each has a rational connection to a non-punitive purpose -- protection of the public, especially children. The ex post facto claim therefore provides no basis for relief.

### E.  Equal Protection

To the extent Collins presents an equal protection claim based on his classification as a sex offender, he is entitled to no relief because as a sex offender Collins is not a member of a suspect class. *Doe v. Moore*, 410 F.3d at 1346; *Windwalker*, 579 Fed. Appx. at 774. With respect to Collins' argument that his classification as a sex offender based

18

on his kidnapping of two young children is improper, this challenge does not "trigger heightened equal protection scrutiny, [and] consistent with *Doe*, [the] ASORCNA is subject to the rational-basis test." *Id*. Under this test, a statute is constitutional "when there is any reasonably conceivable state of facts that could provide a rational basis for it." *Doe v. Moore*, 410 F.3d at 1346. In light of the foregoing, Collins "cannot state a rational-basis equal protection claim, especially given [the] ASORCNA's expressly incorporated legislative findings articulating several reasonable bases for enacting the law, *see Ala. Code* § 15-20A-2(1)-(5)." *Windwalker*, 579 Fed. Appx. at 774.

Moreover, in order to allege a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, state that he is similarly situated with other persons who received differential treatment and that the basis for such treatment was race, religion, national origin, poverty or some other constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932-33 (11th Cir. 1986). Collins has failed to identify any similarly situated inmate, i.e., an inmate with a similar conviction for kidnapping, who has been treated differently in the classification process. In addition, Collins acknowledges that his classification level is based on his convictions for kidnapping two young children, convictions which are defined by the ASORCNA as sex offenses. Consequently, it is undisputed that the classification decision is not based on any constitutionally protected

interest and, therefore, no violation of equal protection has occurred.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before July 21, 2015 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d

33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

Done this 6th day of July, 2015.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE